## Bynum v. Commonwealth.

(Decided Jan. 28, 1938.)

JOE LANCASTER for appellant.

HUBERT MEREDITH, Attorney General, and J. K. LEWIS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Appellant was convicted in the Calloway circuit court of the crime of housebreaking and sentenced to five years in the penitentiary. He has appealed from the judgment and in his brief he insists on a reversal upon the grounds that the evidence is insufficient to support the verdict, and that instruction No. 2 was erroneous. The indictment charged that appellant broke into a smokehouse, a curtilage of the dwelling of E. C. Spann, and stole and carried away therefrom a certain amount of meat.

E. C. Spann testified that on a night in April, 1937, he went to church and left his smokehouse locked, but did not discover that it had been broken into until the

next morning between 6 and 7 o'clock when he went to the smokehouse and found the lock off, but the chain still there. Upon examination he found that a number of middlings of meat, some hams, a certain amount of lard, and some horse collars and backband had been taken. In the early part of the night in question, appellant's automobile was found stalled in a mud hole within about 200 yards of Spann's smokehouse. Spann said he traced the automobile tracks or treads from the place where the car was stuck back to the corner of his hog lot within a short distance of his smokehouse, and tracks of two people were found leading across the hog lot to the smokehouse. The automobile treads or tracks were the same as the ones found at the place where the car was stuck and clearly indicated that they were made by the same car. Tracks of two people also found leading from the car where it was stuck in the road out into a field a short distance from the car and there he found his horse collars and backband but found no meat; but there were prints in the mud indicating that some other articles in addition to the horse collars and backband had been placed there.

It was shown by a number of witnesses for the commonwealth that appellant's car was stuck in the mud and they identified the car as being the car of appellant.

Raymond Creason testified that appellant came to his house and asked him to go pull him out of the mud and he took his car and went to the scene but found no one there; that another person was with appellant, but he did not recognize the person and could not state whether it was a man or woman.

John McMillan testified concerning the automobile tracks and traced them back towards Spann's house and said that they showed to be the same, and the tracks of two people had gone across the lot to Spann's smokehouse.

Toly McMillan testified that on that night he was going home from church about 9 o'clock and saw appellant's car mired in the ditch and slowed down but observed that there was nobody about it; and he passed the car and saw appellant and a woman going north from the car and that he recognized appellant as he went up the road. A number of other witnesses gave

like testimony in reference to the automobile tracks and the tracks of two people leading from where the automobile had stopped near Spann's place, across the lot to the smokehouse, and also the tracks leading from the automobile out into the field to where some of the stolen loot was found and that the weeds were broken down and other imprints and signs indicating that something else had been placed there besides the horse collars.

Appellant admitted that he was on the road in that vicinity that night, but he was indefinite as to where he was going or for what purpose he was there. He also admitted that his car stalled in the mud but said that another passing vehicle struck his car and knocked him into the mud or ditch and disabled his car; and that Herbert Pitman immediately came along and tried to pull him out of the mud but could not, and he then went and got Raymond Creason to pull him out. He denied that he was about Spann's smokehouse or other premises or that he knew anything about or had anything to do with breaking into the smokehouse. He admitted on cross-examination that he had theretofore served a term in the penitentiary for counterfeiting money.

Herbert Pitman testified that he was on the road that night driving along just behind appellant and saw the passing vehicle strike appellant's car and knock it into the ditch; that he drove up and stopped and asked appellant if he could help get him out and tried to get him out but could not, and appellant then went to Creason's to get him to bring his car and pull him out. Later, on cross-examination Pitman said that he carried appellant to Creason's home in his car.

Hilda Allen, testifying for appellant, said that she was with him on that afternoon and that night and that defendant took her home about 11 or 11:30 o'clock. She also testified that a passing vehicle struck appellant's car and knocked them off the highway. On cross-examination she was asked if she did not tell Carl Kingans on the morning after the smokehouse was broken into that she had not seen appellant in three or four days, and she said:

> "I don't remember; I told him Clark (appellant) brought me home that night and he (Kingans) asked me if he stayed all night and I told him no."

She was asked the second time if she did not tell Kingans that she had not seen defendant in three or four days and she finally denied making that statement.

Carl Kingans was called in rebuttal for the commonwealth and testified that Hilda Allen did tell him that she had not seen appellant for two or three days and had not seen him on Sunday or Sunday night, the night the offense was committed.

Toly McMillan was also called in rebuttal for the commonwealth and testified that immediately after he passed appellant's car he saw appellant and a woman going toward Creason's home and that they were not in Mr. Pitman's car or any car at all and that Pitman did not carry them to Creason's home, and that he never saw Pitman there at all that night. On cross-examination on rebuttal he was asked if Pitman might have carried appellant and the woman to Creason's home and he, witness, did not see them, and the witness said that appellant and the woman were walking and appellant was just leaving the car and Pitman was not with him at all.

The evidence is mostly circumstantial, but it seems to be reasonably well connected. It is shown by the undisputed evidence that the car tracks or treads leading from where appellant's car was stalled in the mud, back to the premises where the smokehouse was broken into, appeared to be the same. Of course, different cars in the community might have the same kind of tires or tread, but this was a circumstance competent for the jury's consideration. It is further shown that there was another person with appellant and tracks of two people were found leading from where the car had stopped near Spann's premises, and also the tracks of two people were found leading from where appellant's car was stalled, out into the field where a part of the loot was found, and there were very visible indications that other articles had been hidden or placed around or about the place where the horse collars were found. The circumstances strongly indicate that the same person or persons who broke into the smokehouse were the same one or ones who had stored the horse collars and perhaps other things where they were found in the field near where appellant's car was stalled. Furthermore, the

evidence of appellant and his witnesses is to some extent discredited by the fact that appellant had theretofore been convicted of a felony, and Pitman is contradicted by Toly McMillan in his statement that he carried appellant and his woman companion from appellant's car to Creason's home. McMillan was positive that he saw appellant and his companion walking toward Creason's home and no one was with them. No attempt is made by defendant to impeach or otherwise contradict McMillan's evidence. Also, according to the evidence of Carl Kingans, Hilda Allen made contradictory statements about being with appellant on the night in question. It appears that during the investigation immediately after the crime was committed, Kingans interviewed Miss Allen concerning the whereabouts of appellant on that night and she told him that she had not seen him for three or four days and was not with him on that night. But for the contradictory statements of Hilda Allen and the evidence of Toly McMillan contradicting the appellant's witness Pitman, and the further fact that appellant had been previously convicted of a felony, appellant's argument might more approach merit. In view of all the facts, the jury had the right to give but little, if any, weight to the evidence of appellant and his witnesses and to give full credit to the evidence of the witnesses for the commonwealth, none of whom are impeached or otherwise contradicted. Under the proven facts and circumstances, we are unable to say that the verdict is not supported by the evidence.

It is next insisted that instruction No. 2 is erroneous. That instruction reads:

"It is further my duty to say to you that if, upon the whole case, you entertain a reasonable doubt of the defendant having been proven guilty it is your duty to acquit him or find him not guilty."

This instruction does not begin with the language usually contained in such instructions, but it does tell the jury that if it entertained a reasonable doubt that defendant had been proven guilty, it would find him not guilty. Very clearly the instruction is not misleading and could not have been prejudicial.

Finding no prejudicial error, the judgment is affirmed.